IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DANYALE YARGER, *on behalf of herself and those similarly situated*, | |
| Plaintiff, | |
| v. | Case No. 2:19-CV-2767-JAR-JPO |
| FRESH FARMS, LLC, | |
| Defendant. | |

MEMORANDUM AND ORDER

In this putative class action, Plaintiff Danyale Yarger alleges that Defendant Fresh Farms, LLC ("Fresh Farms") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").  The Clerk entered default against Fresh Farms after it failed to appear or defend within twenty-one days of receiving notice of Plaintiff's Complaint.  This case is before the Court on Fresh Farms' Motion to Set Aside Clerk's Entry of Default (Doc. 9) and Plaintiff's Motion to Certify Class and for Leave to Take Discovery Prior to Entry of Final Judgment (Doc. 6).  While Fresh Farms has filed neither a reply in support of it motion to set aside default nor a response in opposition to Plaintiff's motion for class certification and for leave to take discovery, the time for doing so has passed and the Court is prepared to rule.  As discussed below, Fresh Farms' motion to set aside default is denied and Plaintiff's motion to certify a class and for leave to take discovery is granted in part and denied in part without prejudice.

I.      Background

Plaintiff filed her Complaint in this matter on December 19, 2019.  Plaintiff, a Kansas resident, alleges that Fresh Farms, a South Dakota wholesaler that delivers fruit and vegetables to customers nationwide, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited,

automatic text messages to Plaintiff's and the putative class members' cellular phones.  Plaintiff alleges that she received an unsolicited text message advertisement from Fresh Farms on November 7, 2019.  Under Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiff seeks certification of a proposed class consisting of "[a]ll persons throughout the United States who, at any time between December 19, 2015 and the present: (1) subscribed to a cellular telephone service; and (2) received, at the telephone number assigned to such service, one or more automated text messages from Fresh Farms.[1]

Plaintiff omits from the class definition the requirement—previously included in her Complaint—that class members be persons for whom "Defendant did not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff."[2]  Plaintiff states that she omitted this requirement from the class definition because "express written consent" is an affirmative defense to a claim for violation of the TCPA.  Yet Fresh Farms has not entered an appearance in this case, has not asserted an "express written consent" defense and has thereby waived the defense, and has not presented any evidence of such consent as to Plaintiff or any other member of the proposed class.[3]

Plaintiff seeks appointment as class representative; her attorneys' appointment as class counsel; declaratory and injunctive relief; an award of damages under § 227(b)(3)(B); treble damages under § 227(b)(3)(C); attorneys' fees, costs, and expenses under Rule 23; and pre-and

---

[1] Doc. 6 at 3−4.

[2] Doc. 1 ¶ 37.

[3] Doc. 6 at 4 n.1.

post-judgment interest.  Plaintiff seeks up to $1,500.00 in damages for each text message sent in violation of the TCPA.

On March 17, 2020, Plaintiff filed an application for default, which showed that Fresh Farms had been served with the Complaint on December 23, 2019, but had failed to appear or file an answer within the twenty-one-day deadline set forth in Fed. R. Civ. P. 12(a).  The Clerk entered default against Fresh Farms on March 18, 2020.[4]

On April 28, 2020, Plaintiff filed a motion for class certification and for leave to take discovery prior to the entry of a final default judgment.  Fresh Farms' response to that motion was initially due on May 12, 2020.  On that date, Fresh Farms made its first appearance in this action, filing both a motion for an extension of time to respond to Plaintiff's class certification motion and a motion to set aside the Clerk's entry of default.  The Court extended Fresh Farms' deadline to respond to Plaintiff's motion for class certification to June 11, 2020, and then later extended it again to July 6, 2020.[5]

After Plaintiff opposed Fresh Farms' motion to set aside the Clerk's entry of default, however, Fresh Farms' attorney, Brian Baggott, filed a motion to withdraw from this matter.[6] Mr. Baggott indicated that the primary reason for his withdrawal was that Fresh Farms wished to terminate his representation due to lack of financial resources.  Mr. Baggott attached to his motion documentation that he advised Fresh Farms that it could not, as a limited liability company, represent itself in litigation.[7]  Mr. Baggott also advised Fresh Farms of its July 6 deadline to oppose Plaintiff's motion for class certification and for leave to take discovery prior

---

[4] Doc. 5.

[5] Docs. 11, 15.

[6] Doc. 17.

[7] Doc. 17-1 at 2.

to entry of a final default judgment.  United States Magistrate Judge James P. O'Hara granted

Mr. Baggott's motion to withdraw on June 18, 2020, and then on July 7, 2020, issued a Notice

and Order to Fresh Farms warning that:

> Limited liability companies, like other corporate entities, may not
> proceed pro se nor be represented by a non-attorney corporate
> officer.  Thus, by **August 3, 2020**, new counsel must enter an
> appearance for Fresh Farms, LLC.  Fresh Farms, LLC is warned
> that if it fails to obtain counsel to represent it in this action by the
> set date, default judgment likely will be entered against it.[8]

August 3 has passed, but no new counsel has entered an appearance on Fresh Farms'

behalf.  Although the Court twice extended Fresh Farms' deadline to respond to Plaintiff's

motion for class certification and for leave to take discovery, Fresh Farms did not respond, nor

did it file a reply in support of its motion to set aside the Clerk's entry of default.[9]  Fresh Farms

also failed to seek leave to answer out of time.

## II.     Fresh Farms' Motion to Set Aside Clerk's Entry of Default

### A.     Legal Standard

Under Fed. R. Civ. P. 55(c), the Court may "set aside an entry of default judgment for

good cause."  Under Rule 55(c), courts principally consider the following factors in determining

whether good cause exists: (1) whether the default was the result of culpable conduct by the

defendant; (2) whether the plaintiff would be prejudiced by setting aside the default; and (3)

whether the defendant presents a meritorious defense.[10]  "These factors are not 'talismanic' and

---

[8] Doc. 19 at 1 (citation omitted).

[9] Under D. Kan. Rule 6.1(d), Fresh Farms' reply was due on June 30, 2020.

[10] *Hunt v. Ford Motor Co.*, No. 94-3054, 1995 WL 523646, at *3 (10th Cir. 1995); *Scott v. Power Plant Maint. Specialists, Inc.*, No. 09-CV-2591-KHV, 2010 WL 1881058, at *4 n.2 (D. Kan. May 10, 2010) (citing *Clelland v. Glines*, No. 02-2223-KHV, 2003 WL 21105084, at *3 (D. Kan. Apr. 11, 2003)).

the court may consider other factors."[11]  Further, the standard is "fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment.'"[12]

However, "willful failure alone may constitute sufficient cause for the court to deny the motion."[13]  The Tenth Circuit has counseled that

> default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.[14]

Under this framework, the Court finds that the March 18, 2020 Clerk's entry of default against Fresh Farms should not be set aside.

## B.   Discussion

Regarding the first factor set forth above, a defendant's conduct is considered culpable if he defaulted willfully or has no excuse for the default.[15]  A defendant's knowledge of a lawsuit and his post-service actions "play a role in measuring the willfulness of a defendant's default."[16]  When the defendant has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, his failure is willful and "demonstrates complete disregard for the authority of the Court."[17]  If the defendant has shown culpable conduct in

---

[11] *Hunt*, 1995 WL 523646, at *3 (citing *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)).

[12] *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (quoting *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)).

[13] *Guttman v. Silverberg*, 167 F. App'x 1, 3 (10th Cir. 2005).

[14] *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

[15] *United States v. Timbers Preserve, Routt Cty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogation on other grounds recognized by Viking Ins. Co. of Wis. v. Baize*, 753 F. App'x 549, 553 (10th Cir. 2018).

[16] *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008).

[17] *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (citing *Hunt v. Ford Motor Co.*, 65 F.3d 178 (Table), 1995 WL 523646, at *3 (10th Cir. 1995); *Ledbetter v. Kan. Dep't Soc. & Rehab. Servs.*, No. 99–2261–KHV, 2000 WL 206208 (D. Kan. Jan. 3, 2000)); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1106 (D. Kan.

defaulting, the court may refuse to set aside the default on that basis alone, without considering the other factors.[18]

Fresh Farms submitted the declaration of its CEO, Irina Kleinsasser, stating that "[w]hen this TCPA lawsuit was filed and served, Fresh Farms did not have the financial resources to consult and to hire a TCPA attorney to prepare and file a response or to otherwise represent Fresh Farms in this lawsuit."[19]  Instead, Fresh Farms "consulted" with a local South Dakota attorney who had "no experience with the TCPA."[20]  Kleinsasser states that Fresh Farms retained TCPA counsel as soon as it was able to pay for such representation.  Fresh Farms argues that it in no way attempted to manipulate the legal process to benefit itself or gain leverage through delay, and that because it did not act in bad faith, its conduct is not culpable.

Plaintiff counters that after Fresh Farms was served with the summons and Complaint on December 23, 2019, it chose to ignore this lawsuit for months.  Plaintiff points out that Kleinsasser's declaration tacitly acknowledges that Fresh Farms was aware of this lawsuit at the time of service.  Further, in support of her application for default in March 2020, Plaintiff submitted the declaration of one of her attorneys, Jeremy M. Suhr.[21]  Suhr attests that Bob Trzynka, an attorney purporting to represent Fresh Farms, corresponded with Suhr's firm by email on February 18 and 19, 2020.[22]  Trzynka represented that Fresh Farms intended to answer soon, that Fresh Farms would like a brief extension of time to do so, and that he would call

---

1993) ("A defendant's conduct has been determined to be 'culpable' if he has received actual or constructive notice of the filing of the action and failed to answer.") (citation omitted)).

[18] *Hunt,* 1995 WL 523646, at *3.

[19] Kleinsasser Decl., Doc. 10-1 ¶ 2.

[20] *Id.* ¶ 3.

[21] Suhr Decl., Doc. 4-1.

[22] *Id.* ¶ 7.

Plaintiff's counsel to discuss.[23]  However, neither Suhr nor any other member of his firm received any calls or further emails from anyone purporting to represent Fresh Farms.[24]  **Finally,** citing and attaching a prior default judgment against Kleinsasser and related entities in a different case,[25] and referring to prior litigation brought against an alleged predecessor entity by the United States Department of Agriculture, Plaintiff contends that Fresh Farms is no stranger to the legal process and has made a calculated decision to disrespect the legal process and this Court's authority.  Plaintiff argues that Fresh Farms appeared in this case only in an attempt to stave off discovery.

The Court agrees with Plaintiff that Fresh Farms' failure to appear in this case until months after service amounts to culpable conduct rather than inadvertence or simple neglect. Fresh Farms' CEO does not appear to be a stranger to the legal process.  Yet despite having knowledge of this suit at the time it was filed in December 2019, or at the latest in mid-February 2020, Fresh Farms failed to appear, seek an extension of time to respond, or otherwise communicate with this Court.  Fresh Farms' explanation that it did not have the resources to hire a "TCPA attorney" is not a persuasive justification for having failed to respond until nearly five months after service.  No particular TCPA expertise is required to seek an extension of time to

---

[23] This correspondence is attached to Suhr's Declaration.  *Id.* at 8−9.

[24] *Id.* ¶ 8.

[25] Doc. 16-1, Judgment Against Defendants the Fruit Club, Inc., Matthew Kleinsasser, and Irina Kleinsasser in *David Reenders Blueberries, LLC v. the Fruit Club, Inc.*, No. 1:18-cv-747-PLM (W.D. Mich. Jan. 16, 2019). Under Fed. R. Evid. 201, the Court may take judicial notice at any time in the proceeding of a fact "that is not subject to reasonable dispute because it[] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).   Thus, a court may take judicial notice of court filings and other matters of public record.  *See, e.g., Anderson v. Herbert*, 745 F. App'x 63, 68 (10th Cir. 2018) (noting that court may take judicial notice of "proceedings in other courts . . . if those proceedings have a direct relation to matters at issue") (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979))).  The Court here takes judicial notice of prior judicial proceedings against Irina Kleinsasser in the United States District Court for the Western District of Michigan.

respond, nor does Fresh Farms' contention that it lacks the resources to participate in this case excuse it from its obligations under the Federal Rules of Civil Procedure.[26]

Further, despite filing a motion to set aside the Clerk's entry of default, Fresh Farms never sought leave to answer out of time.  In fact, it appears that Fresh Farms has now entirely ceased participating in this case, as evidenced by its failure to respond to Plaintiff's motion for class certification and its failure to obtain new counsel.  It is a well-established rule that "a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."[27]  Fresh Farms' former counsel advised it of this limitation when it requested that he withdraw, yet no new attorney has entered an appearance on behalf of Fresh Farms despite Judge O'Hara's express warning that default would likely be entered against Fresh Farms if it failed to obtain new counsel by August 3, 2020.

A district court may refuse to set aside default on the basis of culpable conduct alone, and in light of Fresh Farms' continuing failure to participate in this case, the Court declines to consider the remaining two factors here.  Because this litigation has been essentially halted due to Fresh Farms' unresponsiveness, the Court denies Fresh Farms' motion to set aside the Clerk's entry of default.

---

[26] *See, e.g., Cochran v. Shri Ambaji Corp.*, No. 14-2491-EFM-KMH, 2015 WL 2114025, at *2−3 (D. Kan. May 6, 2015) (finding that defendant's circumstances did not excuse its delinquency in responding to suit where multiple attorneys declined representation or quoted fee requirements that defendant could not afford); *United States v. Goldston*, No. 06-cv-02153-REB-KLM, 2008 WL 6825738, at *5 (D. Colo. July 28, 2008) (stating that defendant's "assertions that it lacks the funds to proceed do not excuse it from the requirements of the Federal Rules of Civil Procedure or its need to comply with Court Orders.") (citation omitted)).

[27] *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) (citing *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962)).

### III.  Plaintiff's Motion for Class Certification and for Leave to Take Discovery Prior to Entry of Final Judgment

#### A.  Legal Standards

Fed. R. Civ. P. 23 governs class actions in federal court.  The court possesses significant latitude in deciding whether or not to certify a class,[28] and whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical considerations.[29]  "[A] clerk's entry of default does not change the analysis that a district court must undertake in deciding whether to certify a class because any other conclusion might give defendants an incentive to default in situations where class certification seems likely."[30]  Once default has been entered, the plaintiff's well-pleaded allegations are deemed admitted.[31]  However, in cases involving default, "certification under Rule 23 remains a procedural requirement for a class to recover damages.  A court may therefore only certify a class action if the court is satisfied, after a rigorous analysis, that the prerequisites of the Federal Rule of Civil Procedure 23 have been met."[32]  In deciding whether the proposed class meets the requirements of Rule 23, the Court accepts the allegations of the complaint as true, but "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints."[33]

---

[28] *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cty. Comm'rs,* 543 F.3d 597, 603 (10th Cir. 2008)).

[29] *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (citation omitted).

[30] *Lehman v. Calls After Hours, LLC*, No. 1:18-cv-2601-SO, 2019 WL 8405591, at *1 (N.D. Ohio Aug. 16, 2019); *see also Jackson v. Paycron Inc.*, No. 8:19-cv-00609-WFJ-AAS, 2019 WL 2085430, at *1 (M.D. Fla. May 13, 2019); *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145 NLS, 2014 WL 5454398, at *3 (S.D. Cal. Oct. 27, 2014).

[31] *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

[32] *Lehman,* 2019 WL 8405591, at *1 (citation omitted).

[33] *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (citation omitted); *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) ("While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own 'rigorous analysis,' to ensure Rule 23's

As the party seeking class certification, Plaintiff must show "under a strict burden of proof" that the putative class meets the requirements of Rule 23.[34]  Plaintiff must first satisfy all four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) Plaintiff's claims or defenses are typical of the claims or defenses of the class and (4) Plaintiff will fairly and adequately protect the interests of the class.[35]  These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation.  If the requirements of Rule 23(a) are met, Plaintiff must then show that her case fits within one of the categories described in Rule 23(b).[36]

Plaintiff contends that this case fits within both Rule 23(b)(2) and Rule 23(b)(3).  Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[37]  Under this provision: (1) the defendant's "actions or inactions must be based on grounds generally applicable to all class members";[38] and (2) "final injunctive relief must be appropriate for *the class as a whole*."[39]  The Tenth Circuit interprets this requirement as demanding "a certain cohesiveness among class members with

---

requirements are met.") (quoting *Vallario v. Vandehey*, 554 F.3d 1259, 1266−67 (10th Cir. 2009)); (citing *Shook v. Bd. of Cty, Comm'rs of Cty. of El Paso*, 543 F.3d 597, 612 (10th Cir. 2008))).

[34] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350−51 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").

[35] Fed. R. Civ. P. 23(a).

[36] *See* Fed. R. Civ. P. 23(b).

[37] Fed. R. Civ. P. 23(b)(2).

[38] *Shook*, 543 F.3d at 604.

[39] *Id.*

respect to their injuries, the absence of which can preclude certification."[40]  Another

consideration in the Rule 23(b)(2) analysis is whether class certification is necessary.[41]

Rule 23(b)(3) requires the plaintiff to show that "questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy."[42]  In determining whether the requirements of predominance and superiority are

satisfied, the Court must consider: "(A) the class members' interests in individually controlling

the prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

likely difficulties in managing a class action."[43]

Finally, Plaintiff requests leave to conduct discovery prior to the entry of a final default

judgment to identify members of the putative class and their damages as contemplated by Fed. R.

Civ. P. 55(b)(2).  "Once default is entered, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

mere conclusions of law."[44]  "Thus, in determining whether to enter a default judgment, the

---

[40] *Id.* (first citing *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007); then citing *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005); then citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); and then citing 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4.11 (4th ed. 2002)).

[41] *See, e.g., Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994); *M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 286 F.R.D. 510, 518–521 (S.D. Ala. 2012); Charles Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.2 (3d ed. 1998).

[42] Fed. R. Civ. P. 23(b)(3).

[43] *Id.*

[44] *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688 (3d ed. 1998)); (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206–08 (5th Cir. 1975)).

district court [may] conduct[] a hearing to establish the truth of [the plaintiff's] allegations."[45] Further, "[w]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding."[46]  "It is the Plaintiff's duty to prove damages with 'reasonable certainty.'"[47]  Accordingly, under Rule 55(b)(2), "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."[48]

### B.    Discussion

The Court finds that Plaintiff's request for class certification is premature.  Other courts have recognized the trend in TCPA cases of plaintiffs filing early motions for class certification "as a means to avoid the named plaintiff's claim possibly being rendered moot by the defendant's offer of judgment."[49]  However, in the TCPA case of *Campbell-Ewald Co. v. Gomez*, the Supreme Court ruled that "an unaccepted offer of settlement has no force.  Like other unaccepted contract offers, it creates no lasting right or obligation.  With the offer on the table, and the defendant's continuing denial of liability, adversity between the parties persists."[50]  Thus,

---

[45] *Shell v. Henderson*, 622 F. App'x 730, 734 (10th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)(C)).

[46] *Amezguita v. Dynasty Insulation, Inc.*, No. CV 10-1153 MV/CG, 2012 WL 12973893, at *3 (D.N.M. Sept. 15, 2012) (quoting *United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006)).

[47] *Id.* (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 152 (2d. Cir. 1999)).

[48] Fed. R. Civ. P. 55(b)(2).

[49] *Innovative Accounting Sols., Inc. v. Speedway Office Prods.*, No. 17-12563, 2017 WL 8682373, at *1 (E.D. Mich. Aug. 8, 2017); *see also, e.g.*, *Gorss Motels, Inc., v. Cetis, Inc.*, No. 3:16cv1368 (RNC), 2017 WL 4856866, at *2 (D. Conn. Feb. 20, 2017) (noting trend of filing placeholder class certification motions "to prevent the possibility of defendants 'mooting the claims of would-be class representatives.'") (alteration in original) (citation omitted)); *Family Med. Pharm., LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 3680696, at *2 (S.D. Ala. July 5, 2016) (noting criticism of "premature, skeletal Rule 23 motions, unsupported by any factual record, to jam a foot in the class action door before a defendant can slam it shut") (citation omitted)).

[50] 136 S. Ct. 663, 666 (2016).

there is no longer a need to file premature "placeholder" motions, which are "are neither required nor encouraged by the Federal Rules of Civil Procedure."[51]

Regardless of whether Plaintiff intended her early motion for class certification merely as a placeholder—and despite the fact that Plaintiff's well-pleaded allegations are deemed admitted due to Fresh Farms' default—the Court cannot conduct the required, rigorous Rule 23 analysis without the benefit of a more developed factual record.  For example, to meet her burden with respect to the numerosity element of Rule 23(a)(1), Plaintiff must establish "that the class is so numerous as to make joinder impracticable."[52]  Unlike other circuits, the Tenth Circuit does not hold that numerosity may be presumed at a certain number of putative class members.[53]  Rather, "there is 'no set formula to determine if the class is so numerous that it should be so certified.'"[54]  A court may use common sense in making assumptions to support a finding of numerosity.[55]  However, Plaintiff "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[56]

To support numerosity here, Plaintiff relies on the impersonal nature of the text message she received from Fresh Farms, alleging that

> the number of class members is substantial and may include hundreds if not thousands of persons.  This is evidenced by the impersonal, pro forma advertising content of the subject unsolicited text messages, which were likely sent as part of a broad advertising campaign using an automatic telephone dialing system and which reached the resident of a state (Kansas) located a

---

[51] *Gorss Motels, Inc.*, 2017 WL 4856866, at *2 (quoting *Church v. Accretive Health, Inc.*, 299 F.R.D. 676, 679 (S.D. Ala. 2014)); *see Innovative Accounting Sols., Inc.*, 2017 WL 8682373, at *1.

[52] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Peterson v. Okla City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)).

[53] *Id*.

[54] *Id.* (quoting *Rex v. Owens ex rel. Okla.,* 585 F.2d 432, 436 (10th Cir. 1978)).

[55] *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D.N.M. 2007).

[56] *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 672 (D. Kan. 2008) (citing *Rex*, 585 F.2d at 436).

substantial distance from South Dakota, where Fresh Farms bases
its "nationwide" business of delivering fruit and vegetables.[57]

In contrast, the cases Plaintiff relies upon to support certification involve at least some factual

evidence of numerosity other than the impersonal nature of one text message.[58]  Because

numerosity is such a fact-specific inquiry, the district court is granted wide latitude in making

this determination.[59]  The Court is not satisfied, at this time, that the numerosity requirement is

met here.

The Court also reserves judgment on the application of the remaining Rule 23(a)

requirements, and the requirements of Rule 23(b), to the facts presently alleged because the

nature and scope of the class Plaintiff seeks to represent is unclear.  Plaintiff asserts in her

Complaint that she did not provide "prior express written consent" to receive communications

from Fresh Farms within the meaning of 47 C.F.R. § 64.1200(a)(2) and (f)(8).[60]  However,

Plaintiff now argues that Fresh Farms has waived the affirmative defense of prior express written

consent by its default, and states that she has therefore redefined the proposed class definition to

omit the requirement that class members not have given such consent.

---

[57] Doc. 6 at 4.

[58] *See Jackson v. Paycron Inc.*, No. 8:19-CV-00609-WFJ-AAS, 2019 WL 2085430, at *2 (M.D. Fla. May 13, 2019) (finding that numerosity requirement was met—in the Eleventh Circuit where more than forty class members is presumed adequate—where there were many online complaints about defendant's calls and defendant ignored plaintiff's request to stop calling him); *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 2:16-cv-00823-MCE-EFB, 2017 WL 3284797, at *3 (E.D. Cal. Aug. 2, 2017) (finding numerosity from substantiated allegation of over 1,000 call recipients); *Whitaker v. Bennet Law, PLLC*, No. 13-cv-3145-L(NLS), 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) (finding numerosity in part based on declaration establishing that "numerous online forums exist where a vast amount of complaints have been lodged against [the defendant] regarding unethical debt collection endeavors, ranging from allegations of harassment to violations of the TCPA"); *Duncan v. Sabal Palms I Assocs., Ltd.*, No. 89-3 CIV-FtM-10 (A), 1990 WL 10600304, at *2 (M.D. Fla. June 7, 1990) (finding numerosity met where Plaintiff alleged known class of at least 130 members).

[59] *Trevizo*, 455 F.3d at 1162.

[60] Doc. 1 §§ 19–20, 26.

Plaintiff seems to acknowledge some uncertainty about this new class definition, stating that this matter involves the common question of "whether Defendant or its affiliates, subsidiaries, or agents had prior express written consent, as required, to send such marketing solicitations, *assuming such an affirmative defense is not waived by Fresh Farms' default*."[61] And, despite having changed the proposed class definition to omit the lack-of-consent requirement, Plaintiff argues in her motion for class certification that Fresh Farms violated the TCPA through its "repeated initiation of autodialed text message advertisements to the cellular telephone numbers of Plaintiff and members of the proposed Class, *absent the requisite 'express written consent*,'" and that she is a typical " member of the Class because she received an unsolicited text message from Fresh Farms *without providing any prior express written consent, placing her squarely within the proposed Class definition*."[62]  Further, Plaintiff argues that management of the claims at issue will present few difficulties because "*the class members, by definition, did not provide the prior express written consent required under the statute*."[63]  Thus, Plaintiff appears to argue the elements of Rule 23(a) based on the original class definition set forth in her Complaint, rather than on the one proposed in her motion for class certification.

Although Plaintiff would certainly fit within the broader group of persons to whom Fresh Farms allegedly sent text advertisements both with and without prior written consent, the Court presently lacks a definite understanding of the nature of the class Plaintiff seeks to represent, and the unclear and/or shifting class definition complicates the application of Rule 23 at this early stage.  In its discretion, the Court finds that a ruling on whether the requirements of Rule 23(a)

---

[61] Doc. 6 at 5 (emphasis added).

[62] *Id*. at 1, 4 (emphasis added).

[63] *Id*. at 6 (emphasis added).

and (b) are satisfied should await additional discovery on the scope and contours of the purported class and a renewed motion for class certification.

While Plaintiff's motion for class certification is premature, Plaintiff's request for leave to conduct discovery prior to the entry of a final default judgment is well-taken.  Plaintiff states that putative class members can be readily located and notified of this action, and that the statutory amount of damages can be determined, through business records maintained by Fresh Farms, its officers, and its marketing and mobile-aggregation vendors.  "It would be unjust to prevent Plaintiff from attempting to demonstrate the elements for certification of a class without the benefit of discovery, due to Defendant [Fresh Farms'] failure to participate in this case."[64] The Court therefore grants Plaintiff ninety days from the date of this Order to conduct such discovery, after which Plaintiff may renew her motion for class certification, with clarification of the proposed class, and ultimately seek a final default judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Fresh Farms' Motion to Set Aside Clerk's Entry of Default (Doc. 9) is **denied**, and Plaintiff's Motion to Certify Class and for Leave to Take Discovery Prior to Entry of Final Judgment (Doc. 6) is **granted in part and denied in part without prejudice**.  The motion for leave to take discovery is granted; the motion to certify is denied without prejudice.

**IT IS FURTHER ORDERED THAT** Plaintiff shall have ninety (90) days from the date of this Order to conduct class certification and damages-related discovery and to file a renewed motion for class certification.

**IT IS SO ORDERED.**

---

[64] *Leo v. Classmoney.net*, No. 18-cv-80813, 2019 WL 238548, at *2 (S.D. Fla. Jan. 10, 2019) (granting leave to conduct class certification and damages-related discovery in TCPA case where defendant defaulted, and plaintiff needed discovery to establish Rule 23 requirements).

Dated: August 12, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE